## Pearson et al. v. Commonwealth.

Oct. 29, 1943.

Hector Johnson for appellants.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER·

Affirming.

The appellants, Carl Pearson and Raymond Collins, each a juvenile under seventeen years of age, were arrested and brought before the juvenile court of Jackson county, charged by warrant with the crime denounced by sub-section 4, Section 433.250, KRS, of stealing chickens, the property of Fred Pennington, in Jackson county of the value of $2 or more.

Upon the cause coming on for trial before a jury in that court on February 1, 1943, a verdict finding them guilty was returned. Whereupon the court ordered that the cause be certified to the Jackson circuit court and that the defendants be there tried upon the charge as adult offenders under the general laws of the state applicable to such cases.

Upon these actions being thus certified by the judge of the juvenile court to the Jackson circuit court for appropriate action, it ordered that the defendants be certified to the grand jury of Jackson county, which thereupon returned an indictment against the appellants, the two juvenile offenders, accusing them of committing the said crime of feloniously stealing chickens, the property of another, of and above the value of $2, and therein further charged and described as committed by them "with force and arms unlawfully and feloniously against the will and without the consent of the owner" and that they did "take, steal and carry away a certain lot of chickens, to-wit: five fine chickens of the value of $1.00 each, a further description of which is to the grand jury unknown, * * * of the aggregate value of $5.00, the personal property of Fred Pennington, then and there being in the possession, care and custody of Fred Pennington, with the felonious and fraudulent intent then and there to convert the same to their own use and to permanently deprive the said owner of his property therein."

Upon their trial before a jury in the Jackson circuit court under that indictment they were again, as in the juvenile court, found guilty of the crime charged, stealing Pennington's chickens, and their punishment fixed at one year's confinement in the penitentiary. The court thereupon entered judgment sentencing them to the reformatory at Greendale, Ky., to be there confined at hard labor until they became 21 years of age.

From that judgment they prosecute this appeal, assigning two grounds for its reversal: (1) That the court

erred to the prejudice of their substantial rights in failing and refusing to sustain their motion for a peremptory instruction, etc., and (2) that the verdict is palpably against the law and evidence and is the result of prejudice.

The facts as disclosed by the record are substantially as follows:

These juvenile defendants, Pearson and Collins, were at the time of their alleged commission of this chicken stealing crime respectively 15 and 16 years of age and both lived in Jackson county near the home of the prosecuting witness, Fred Pennington, at Kirby Knob, where he conducted a grocery business; that in connection with such business he bought and sold chickens, which he kept at his barn, some fifty yards distant from his store and home. Collins, subsequent to the time Pennington's chickens were stolen, moved to Sand Gap, a small settlement some four or five miles from Kirby Knob.

The evidence further shows that after these appellants were arrested upon this chicken stealing charge, they were held in jail awaiting their trial before the juvenile court, where each voluntarily confessed or admitted that they had on the Sunday night of January 24, 1943, stolen five chickens or hens, which they took to Mr. Brummagin's store at Clover Bottom, where they sold them to him early the next morning for some $3.

Mr. Pennington, the prosecuting witness, testified that having lately lost, prior to the theft of his chickens here involved, many of his chickens, rather late on the night in question, when the theft of his chickens is by the indictment charged to have occurred, upon hearing a noise made by the "hollering and flying" of some guineas which he kept at the barn with his chickens, he went out the back door to see what was wrong, when he saw the front door of the barn fly open and two fellows come out of the barn and go straight over the wire fence and that he fired five shots at them; that as it was dark and the barn some fifty yards distant from him, they got away before he could recognize them or see whether they were carrying any of his chickens away with them; that the next morning he found five or more of his chickens missing, which he described as being "four dommers and a white one;" that in trying to locate his chickens he went, on information received, over to Lyn Brummagin's

store at Clover Bottom, hoping to there find and identify them, but upon arriving there about nine o'clock Mr. Brummagin told him he had bought five chickens early that morning from two boys, but that he had come to the store too late to find and identify them as he (Brummagin) had just previously sold them to a truckman, who had carried them away. The description he gave him of the chickens he had bought from the two boys tallied exactly with that of Pennington's chickens which had been stolen from his barn on the previous night.

Mr. Brummagin also stated that he was familiar with the market value of the chickens which he bought from the boys that morning and that he paid them accordingly therefor, some $2.92 in money and some merchandise, or over $3 for the five hens sold him.

Other commonwealth witnesses stated that on the morning following the Sunday night on which it is admitted by the appellants that they stole and sold the chickens, they saw these two boys at about daybreak walking along the highway, one carrying two and the other three chickens, going towards Brummagin's store; that they did not at the time recognize who they were but did see that they were carrying "four dommers and one white hen;" that when they saw the boys they were just beyond the point of intersection with the highway of the county road, leading back to Pennington's store, and that they later saw them at Brummagin's store, selling the chickens to Mr. Brummagin.

Upon the appellants' trial upon the charge of stealing Pennington's chickens, they, while admitting both their theft and sale of the chickens, pleaded not guilty to the charge of stealing Pennington's chickens and at the conclusion of the Commonwealth's evidence moved the court to direct the jury to return a verdict acquitting them, which was overruled.

Upon the defendants then taking the stand and testifying on their own behalf, they admitted their stealing the chickens and selling them to Mr. Brummagin, but Pearson changed his testimony as earlier given in his confession, to the effect that they had stolen the chickens from the barn of the prosecuting witness, Pennington, as was charged in the indictment, by testifying the same as did Collins, that they had stolen the chickens from Mrs. Asbill, who lived near Sand Gap.

Mrs. Asbill also, when called as a witness for the defendants, stated that she lived at Sand Gap and had there raised some forty or fifty "dommer" and white chickens; further, that on the morning following the night of the alleged chicken theft, she found five of her chickens missing, of which she gave a like description to that given of the chickens sold by appellants to Brummagin.

Upon this evidence and under the instructions of the court, which are not complained of, the jury, upon submission of the case to them, returned a verdict finding the defendants guilty and fixing their punishment at one year's confinement in the penitentiary, whereupon the court adjudged, as stated supra, that they be taken to the state reformatory and there confined at hard labor until they reached their majority.

From that verdict and the judgment entered thereon, as stated supra, defendants have appealed, asking a reversal upon the two grounds above stated, the first of which is that the court prejudicially erred in refusing to grant the peremptory instruction they moved for.

In view of the character and probative effect of the commonwealth's evidence introduced to maintain the prosecution, it is obvious that the court did not err in refusing to give a peremptory instruction, the applicable rule in such case being: "Where there is any competent and relevant evidence to sustain an issue, the question should be submitted, the right of decision on every issue of fact being exclusively for the jury. The direction of a verdict for the defendant is not authorized unless after admitting the testimony offered by the plaintiff, and every reasonable inference to be deduced from the facts proved true, his cause of action is yet unsupported in any degree. However much the evidence of the defendant may overbalance that of the plaintiff, the latter is entitled to have the jury pass upon the issue. Numerical superiority of witnesses does not authorize a peremptory instruction in favor of the party producing them." Stanley's Instructions to Juries, Section 7, p. 12, with note citation of numerous Kentucky authorities upholding this text.

Also, as in substance said in Cummings v. Commonwealth, 221 Ky. 301, 298 S. W. 943, a motion by the defendant for a peremptory instruction is in the nature of a demurrer to the evidence, and, in disposing thereof,

it is necessary for the court to assume as true all the facts which the evidence tends to prove.

Where reasonable minds may honestly differ as to the truth or falsity of conclusions and deductions to be drawn from the evidence, the question is for the jury. Grinstead v. Feinstein, 231 Ky. 502, 21 S. W. (2d) 806.

The evidence here introduced for the commonwealth was to the effect that both the appellants throughout their trial confessed that they had tolen these five chickens, of a market value of over $2 and sold them to Brummagin; that one of the appellants, Pearson, swore that they stole the chickens in question from the barn of the prosecuting witness, Fred Pennington, while the other, Collins, testified that they stole the chickens from Mrs. Asbill. This testimony did not produce a fatal variance between the allegation of the indictment and the proof, but only a conflict in the evidence.

Fred Pennington testifies that five chickens or hens, which were then in his possession and belonged to him, were stolen against his consent by two men from his barn on the night in question, at whom he fired; that they ran away without his recognizing who they were; that in the hope of finding and identifying his stolen chickens, he went to Brummagin's store, where the appellants say they sold the chickens stolen by them, and that Mr. Brummagin told him (as Brummagin also testified) that he had earlier that morning bought five chickens from the defendants, which he described as being exactly like the chickens stolen from Pennington the night before.

This evidence, both direct and circumstantial, clearly tended to show that the chickens in question were stolen from Pennington and its effect was not destroyed by the contradictory testimony of Pearson's confederate, Collins, that the chickens were stolen not from Pennington but from Mrs. Asbill's home near Sand Gap.

Neither, we conceive, does the mere fact that Pearson, when testifying in his own behalf in the circuit court, thus changed his testimony with respect to the ownership of the chickens which they had stolen, in direct contradiction of his earlier given sworn statement that they stole the chickens from Pennington, as charged in the indictment, serve to conclusively determine that factual issue, as to the ownership of the stolen chickens, so as to take the determination of such issue away from the jury, the

rule being that the jury's verdict, when based on any competent and substantial evidence, must be sustained, unless so palpably against the evidence as to compel the conclusion that the verdict resulted from passion and prejudice. Abdon v. Commonwealth, 237 Ky. 21, 34 S. W. (2d) 742.

Such testimony given by the appellants and their witnesses in contradiction of the testimony of the commonwealth's witnesses served only to present the conflicting testimony on this factual issue to the jury, making here applicable the rule above stated.

The verdict of a jury on conflicting evidence in a criminal case must stand, unless palpably against established facts and circumstances, compelling the conclusion that it resulted from passion and prejudice. Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4, 6.

Further was it said in the Shepherd case, supra, that: "A verdict is not palpably against the evidence, when it is reasonable for the jury to find from the proven facts and circumstances that the defendant was guilty. * * * The credibility of the witnesses must be determined by the jury, and that tribunal is at liberty to accept the testimony of one or more witnesses to the exclusion of that produced by others, or to accept part of the testimony on both sides and reject any portion not believed by it. The function of finding the ultimate facts from conflicting testimony is imposed by law upon the jury. * * * It is not possible for this court to know the basis upon which the verdict was rested, but when the evidence affords any fair and reasonable ground upon which it might be sustained, it cannot be said as a matter of law that the result reached was palpably against the proof adduced."

The jury in this instance having found from this conflicting, competent and relevant evidence given by the witnesses that the appellants stole Fred Pennington's chickens of a value of more than $2, we are led to conclude that appellants' second ground urged for reversal, that the verdict is palpably and flagrantly against the law and evidence, is also without merit.

Therefore, for the reasons stated, the judgment is affirmed.