## Hensley v. Commonwealth.

March 5, 1946.

Williams & Allen and O. J. Cockrell for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Ed Hensley, Floyd Hensley and Willie Combs were jointly indicted for the murder of Paul Watts. Ed Hensley was tried separately and his punishment fixed at 21 years in prison. Upon this appeal he is insisting a peremptory instruction should have been given in his favor because the evidence was as consistent with innocense as with guilt.

The Hensleys and Combs were in Jackson during the day of the killing. They left there late in the afternoon and rode to Spicer's Place, known as Rock House, about six miles from Jackson. The three had been drinking beer during the day and stopped to get some more at Rock House before going to their homes a short distance beyond that place. While there Ed Hensley slapped a boy by the name of Neace, and, according to his testimony, Walter Spicer, the principal witness for the Commonwealth, asked him to buy him a beer, and when he told Spicer he had no money Spicer cursed him. This Spicer denied. Ed and Floyd Hensley started up the highway toward their homes in a short while. They passed Mrs. Sallee and her son along the way. Ed Hensley said that shortly after they passed the Sallees he heard someone whistle, and looked back and saw Watts, a young man about 20 years of age, who was not of normal physical development, walking rapidly up the road with Walter Spicer in his rear. The testimony for Hensley is that Watts walked toward Floyd Hensley with a large stick in his hand, and that Spicer called to him and said, "That is not the one. Kill the other one, God damn him"; and, as he turned, Watts struck him in the head with the stick and knocked him down; when he started to get up Watts raised his club to strike him again; and at that time he cut him twice with a knife. Spicer's testimony on this point is that, as Watts started to pass the Hensleys, Floyd struck at him; for a moment Watts was between the Hensleys; and he then turned and walked down the road with one hand on his stomach and the other up in the air. He said also that Watts was unarmed. Spicer did not go to the place where Watts fell, but went on back to the Rock House for help. Ed Hensley's version of the cutting was supported by that of Floyd and the Sallee boy. Mrs. Sallee said that she saw all the parties, but she did not see the actual affray. The Hensleys did not go to the point where Watts fell, but proceeded on toward Floyd's home. A deputy sheriff testified that he made several trips to Ed Hensley's home and to other residences in that vicinity, but was unable to locate him for some time, and when they finally found him on a hill some distance from his home on seeing them he started to run, and after going a short distance he fell and was arrested and brought to jail. On cross exam-

ination Hensley said the reason he did not surrender to the officers was that he was afraid of the Watts family; that the reason he ran when approached by the officers was that he did not know who they were; and that another reason for not surrendering was that he had no money with which to defend himself.

We have often said that the credibility of witnesses is for the jury. Spicer's testimony was to the effect that an attack was made upon Watts by the Hensleys as he attempted to pass them, while the testimony on the other side was to the effect that Watts was the aggressor. Furthermore, Ed Hensley said the lick from a piece of wood three feet in length, with rough edges, only caused a bump on his head without making an abrasion. This seems hardly plausible. The testimony showed also that he was drinking and that he was staggering up the road when he left the Rock House, and, as we have noted, he was in a belligerent mood while at that place. It must not be overlooked also that his actions after he cut Watts were not consistent with his innocence. He did not attempt to give any aid to Watts, nor did he surrender himself and make a plea of self-defense. As said in the recent case of Pearson v. Commonwealth, 295 Ky. 616, 175 S. W. 2d 33, the verdict of a jury on conflicting evidence in a criminal case must stand unless it is palpably against the established facts and circumstances, and compels the conclusion that it was the result of passion and prejudice. Furthermore, the jury might have concluded that Hensley's conduct after the affray was such as to show that he was guilty rather than innocent. Hamilton v. Commonwealth, 292 Ky. 307, 167 S. W. 2d 56.

Under the circumstances, we think the judgment should be and it is affirmed.