## Delk v. Commonwealth.

(Decided October 6, 1915.)

Appeal from Pulaski Circuit Court.

1. Criminal Law—Breach of the Peace—Appeal by Defendant to Circuit Court.—Upon an appeal to the Circuit Court by a defendant, who was tried and convicted in the county court for a breach of the peace, the trial in the Circuit Court is de novo and not by way of review of the proceedings in the county court.

2. Criminal Law—Pleading Offense in Warrant—An offense charged in a warrant need not be placed with the same technical strictness that is required in an indictment.

3. Criminal Law—Motion in Arrest of Judgment—Under section 276 of the Criminal Code, a motion in arrest of judgment will prevail only when the indictment attacked fails to state a public offense, within the jurisdiction of the court.

4. Criminal Law—Breach of Peace—What Term Includes—The term "breach of the peace" is generic, and includes all violations of

public peace or order, or acts tending to the disturbance thereof; the offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet; of an invasion of the security and protection which the law affords every citizen, or of acts which tend to excite violent resentment. Actual personal violence is not an essential element in the offense.

5.   Criminal Law—Breach of Peace—What not Element of Offense.— Actual personal violence is not an essential element in a breach of the peace; but where the excitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrongdoer must be of a .character to induce such condition in a person of ordinary firmness.

R. C. TARTAR for appellant.

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.—
Affirming.

The appellant, James L. Delk, a minister of the Nazarine Revival Mission, while preaching to a large audience at Science Hill, Pulaski County, in November, 1914, used the following language: "Some men will stand around the depot, stores, the post office, and street corners, and watch the women pass,. and size them up; the foot, ankle and form, and they would be willing to give five dollars for the fork."

For using these words appellant was convicted and fined $67.50 for having committed a breach of the peace, under a warrant issued by the judge of the Pulaski county court. Appellant appealed to the circuit court, and upon a trial in that forum, the appellant was again found guilty and fined $62.50 and the costs. He appeals.

1.   When the case was tried before the county judge, the jury merely found the defendant guilty, and the county judge fixed the fine. When the case came on for trial in the circuit court, appellant moved the court to dismiss the appeal and remand the warrant to the county court for trial, upon the ground that the judge of the county court had erroneously fixed the fine, which could only have been fixed by the jury. The motion evidently was made upon the theory that the judgment entered by the county judge was void, because he, instead of the jury, fixed the fine. The motion to dismiss and remand was overruled by the circuit court, but the record fails to show that an exception was taken to the ruling. This,

of itself, is a sufficient answer to appellant's contention, in this court, since the rule is well settled that in order for the appellant to take advantage of a ruling of the trial court he should except to the ruling when made. Civil Code, section 334.

Furthermore, appellant took the appeal to the circuit court, and is now occupying the anomalous position of asking that his own appeal be dismissed and the warrant remanded to the county court which had found him guilty.

For the purposes of this appeal, however, we deem it immaterial whether the judgment rendered by the county judge was valid or erroneous, since this appeal is not from the judgment of the county court, but is from the judgment of the circuit court; and if the rulings of the circuit court were correct, the appellant has no right to complain.

Under Section 366 of the Criminal Code, the case was tried in the circuit court *de novo,* and any error that might have been made in the county court, could not have prejudiced appellant's rights either in the circuit court or on the appeal to this court, since neither the circuit court nor this court is called upon to review the action of the county court. The circuit court tried the action anew, and this court reviews the action of the circuit court.

It necessarily follows, therefore, that there is no merit in appellant's contention that the prosecution should have been dismissed and the warrant remanded to the county court.

2. A reversal is asked because the circuit court refused to sustain a motion in arrest of judgment, made upon the theory that neither the warrant charged, nor the proof showed, a breach of the peace upon the part of the appellant.

Was the warrant sufficient?

Omitting the formal and prefatory portions of the warrant, it reads as follows:

"The said Delk did, in Pulaski county, Kentucky, on or about the 2nd day of November, 1914, unlawfully commit a breach of the peace by using obscene, vulgar and indecent language in the presence of and to an assembly of people, men, women and children, which language was obscene, indecent and offensive, and was calculated to insult the hearers and to provoke an assault and was in

other respects disorderly, the language used and words uttered being unknown to the court, against the peace and dignity of the Commonwealth of Kentucky.''

Section 27 of the Criminal Code of Practice provides that a warrant of arrest shall, in general terms, name and describe the offense charged to have been committed, state the county in which it was committed, and command the officer to whom it is directed to arrest the person named therein as the offender, and bring him before some magistrate of the county in which the offense was committed, to be dealt with according to law.

It further prescribes a form of affidavit necessary for the warrant, which is drawn in general terms, merely naming the offense charged.

It is well settled in this State that the offense charged in a warrant need not be placed with the same technical strictness that is required in an indictment. Driscoll v. Commonwealth, 93 Ky., 393; Commonwealth v. Leak, 116 Ky., 540.

The reason for this rule is quite plain, since prosecutions for misdemeanors usually begin before the inferior courts of the State and must of necessity frequently be tried by officers unskilled in the intricacies of criminal law; and warrants must be drawn, at times, without the assistance of a prosecuting officer.

Furthermore, in misdemeanor cases, greater certainty than that provided by section 27 of the Code is not necessary for the protection of the defendant.

Moreover, no demurrer was filed and no motion was entered, to make the warrant more specific.

Section 276 of the Criminal Code provides as follows:

''The only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute ⌐ ¬ublic offense within the jurisdiction of the court.''

Construing this section in the recent case of Greer v. Commonwealth, 164 Ky., 396, we said:

''Appellant further insists that the indictment was insufficient. This objection was not raised by demurrer, but by a motion in arrest of judgment; and such motion will prevail only when the indictment attacked fails to state a public offense, within the jurisdiction of the court. Although the alleged offense may be so defectively stated in the indictment as to render it bad on demurrer, still, if conceding the facts stated in the indictment to be true,

a public offense has been committed by the defendant, within the jurisdiction of the court, the motion in arrest of judgment will not avail to reach the defect; it is waived by failure to demur.''

The rule above stated was followed in the still later case of Duncan v. Commonwealth, 165 Ky., 247, and is amply sustained by the cases cited in that opinion.

The warrant in this case satisfied the statute.

3. The remaining question before us is, what constitutes a breach of the peace; and, did the use by the plaintiff of the words charged constitute a breach of the peace?

Appellant contends that this prosecution was under section 1267 of the Kentucky Statutes, which provides a fine and imprisonment against any person who shall wilfully interrupt or disturb a congregation assembled for, or engaged in worship. And, upon the trial, appellant introduced sixteen witnesses, who testified they were present on the occasion in which the words charged were used; that they heard the entire sermon; that no one left during the sermon, and at its conclusion, many went forward and professed salvation. On the other hand, the Commonwealth introduced six witnesses, who stated that the language disturbed and humiliated them; disturbed the congregation, and caused a general stir over the congregation, and laughter among some of the younger folks; and that several of the witnesses refused to further attend the services.

The Commonwealth insists, however, that appellant was not prosecuted under section 1267 of the Kentucky Statutes, supra, but was prosecuted for a breach of the peace under the common law; that section 1267, supra, defines a specific statutory offense, while the offense charged in the warrant is a generic term, and may consist of the offense charged in section 1267, or of several other offenses. In support of this contention the Commonwealth relies upon King v. Commonwealth, 32 Ky. L. R., 79; 105 S. W., 419, where this court said:

''A breach of the peace may, therefore, consist of one act, or of several acts, and the fact that the accused are charged with having violated several express statutes, for any one of which violations they might have been punished, affords them no relief from prosecution for a breach of the peace.''

It will be observed that the warrant does not charge that any persons present were disturbed, but that the obscene language used by appellant was calculated to insult his hearers, and to provoke an assault.

Appellant contends there could have been no breach of the peace unless every element necessary to a conviction under section 1267, *supra,* was present, and that it was, therefore, necessary for the warrant to charge, and the proof to show, that the appellant wilfully used the words charged, with the intention of disturbing the congregation. According to appellant's contention the elements of intent and force or violence are necessary to constitute a breach of the peace.

Is it necessary that violence should attend the act, and should it be calculated to provoke turbulence and open disorder, or was appellant's guilt established when the Commonwealth proved the use of the obscene language upon the part of the appellant?

A breach of the peace is a common law offense, and its punishment is provided by section 1268 of the Kentucky Statutes.

Bouvier defines a breach of the peace as follows:

"A violation of public order; the offense of disturbing the public peace; an act of public indecorum is also a breach of the peace."

In Cyc., Vol. 5, page 1024, this offense is defined, as follows:

"The term 'breach of the peace' is generic and includes all violations of public peace or order or acts tending to the disturbance thereof. The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the law affords every citizen, or of acts such as tend to excite violent resentment. Actual personal violence is not an element in the offense, but where the incitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrong-doer must be of a character to induce such condition in a person of ordinary firmness."

This last definition was quoted with approval by this court in King v. Commonwealth, 32 Ky. L. R., 80; 105 S. W., 419. It is, perhaps, as accurate and comprehensive a definition of this offense as is to be found in the books, and is sustained by authority.

See also Galvin v. State, 6 Caldw., 294; Golson v. State, 86 Ala., 601.

In Stewart v. State, 4 Okla. Cr., 564; 32 L. R. A., (N. S.), 505, it is said:

"A breach of the peace is a violation of public order or decorum; the offense of disturbing the public peace. By 'peace' is meant the tranquility enjoyed by the citizens of the community, where good order reigns among its members."

In Halter v. State, 74 Neb., 757; 7 L. R. A. (N. S.), 1079; 121 Am. St. Rep., 754, the court said:

"An offense against the public peace may consist either of an actual breach of the peace, or doing that which tends to provoke or excite others to do it. Within the latter fall all acts and attempts to produce disorder by written or oral communications, for the purpose of generally weakening those religious and moral restraints, without the aid of which mere legislative provisions would prove ineffectual."

And, in Halter v. State, *supra*, it was held this definition justified an act punishing the desecration of the national flag as a valid exercise of the police powers of the State. See also People v. Most, 171 N. Y., 423; 58 L. R. A., 509; Town of Neola v. Reichart, 131 Ia., 492; State v. Clark, 64 W. Va., 625.

The rule above announced is approved by Bishop in his New Criminal Law, Vol. 1, Section 539, as follows:

"To lay the foundation for a criminal prosecution the peace need not be actually broken. The community is disquieted by any act tending to the breach, of such sort and proximity as to create disturbing apprehensions in the minds of the lookers-on. Thereon the law interferes and pronounces what is done indictable."

Under this rule, Bishop cites as instances of breaches of the peace, the sending of a challenge, verbal or written, to fight a duel, although no duel is fought; the publishing of a libel, or even in some extreme circumstances, the uttering of slanderous words; eavesdropping, consisting of one's hanging about the dwelling house of another, hearing tattle, and repeating it to the disturbance of the neighborhood; a common scold because of the tendency of the continual scolding to public disquiet.

The definition of what constitutes a breach of the peace is stated as follows in 8 R. C. L., section 305:

"In general terms a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace. By 'peace,' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the natural right of all persons in political society. It is, so to speak, that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted. It is not necessary that the peace be actually broken to lay the foundation for a prosecution for this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals without the commission of the offense. The good sense and morality of the law forbid such a construction."

See note in 13 L. R. A., 163.

In Davis v. Burgess, 54 Mich., 514; 52 Am. Rep., 828, the court said:

"Now, what is understood by 'a breach of the peace'? By 'peace', as used in the law in this connection, is meant the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is 'a breach of the peace.' It is the offense of disturbing the public peace, or a violation of public order or public decorum. Actual personal violence is not an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals, without the commission of the offense."

In Roberson's Criminal Law, Volume 2, section 581, it is said:

"A breach of the peace is a word of very extensive meaning. It is any intentional violation of the tran-

quility and repose enjoyed by the citizens of a community where good order reigns among its members. Actual personal violence is not an essential element in the offense.''

The reason whereon most of the cases are said to rest, is a tendency to a breach of the peace; or, as otherwise expressed, the liability to stir up resentment and quarrels. The criminal law is as well preventive as vindictive; and a threatened danger demands correction the same as an actual one. Moreover, the community is disturbed when it is alarmed.

Referring to the definition above approved in King v. Commonwealth, it will be observed that the term ''breach of the peace'' is quite broad, and includes not only all violations of the public peace or order, but acts tending to the disturbance thereof, including acts of public turbulence or indecorum, in violation of the common peace and quiet.

Applying this definition to the nasty and obscene words used by appellant, we are of opinion they come within the definition, and constituted a breach of the peace.

There was no possible excuse for the use of such language in the pulpit, or elsewhere; and that fact alone is sufficient to incite all right thinking persons to indignation, if not violence. People v. Burman, 154 Mich., 150; 25 L. R. A. (N. S.), 251; State v. White, 18 R. I., 473. The appellant's excuse that he was merely rebuking the sin of impurity; that he did not intend to disturb or embarrass any one, but made the statement as a warning and rebuke to sin, is wholly without justification.

It does not avail appellant for him to say he has a right to propagate his religious views. That right is not denied; but one will not be permitted to commit a breach of the peace, under the guise of preaching the gospel. If one be licensed to use the pulpit for such disgraceful performances, as the appellant admits he was guilty of in this case, then women and children are to be insulted with impunity by the use of the most obscene vulgarity in places where they go to worship.

It is well known that an act which if committed at a certain place or time would not amount to a breach of the peace might well be considered as a crime if committed at another time or place, and under different circumstances. People v. Johnson, 86 Mich., 175; 24 Am. St. Rep., 116; 13 L. R. A., 163.

If this be not an act of public indecorum in violation of the common quiet and consequently a breach of the peace within the meaning of the definitions above given, it would be difficult to imagine such a breach, short of actual violence. That it tended to provoke violence at the hands of outraged parents and right thinking men, there can be little doubt.

We are clearly of opinion that the language used by appellant constituted a breach of the peace.

In assessing against appellant the modest fine of $62.50, the jury acted with moderation.

Judgment affirmed.