**Dan Sheridan O'LEARY, III, et al., Appellants,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 9, 1969.

Roger B. Sledd, Robert Allen Sedler, Lexington, for appellants.

John B. Breckinridge, Atty. Gen., George F. Rabe, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

This is an appeal from a conviction for breach of the peace, KRS 437.010, entered by the Fayette Circuit Court on February 6, 1968.

On November 6, 1967, the Defense Intelligence Agency (D.I.A.) and other prospective employers recruiting employes from among the student body of the University of Kentucky were holding interviews on the second floor of the Old Agricultural Building in the Placement Service hallway. The appellants and other regularly enrolled students of the university undertook to protest against D.I.A.'s presence on the university campus.

In the morning Associate Dean of Students Jack Hall met with the group of student protestors and established certain ground rules, which were: (1) peaceful picketing would be permitted; (2) noise would have to be maintained at a level where all could operate; and (3) access would have to be available to the people going to Placement Service rooms.

Between 9:30 A.M. and 1:00 P.M., during which time one or more of its number were passing out leaflets, the protesting group increased from some five students to approximately 17 students and five members of the press. Between 1:00 and 1:30 P.M., after conferring with the interviewing representatives, Dean Hall determined that "we were unable to continue the operation of the Placement Service with any amount of normality" and asked the students to move to the public lobby area on the first floor of the building or outside the building. At this time all of the students and press representatives left the second floor with the exception of the four appellants.

The appellants were standing in the entrance to the alcove which led to three rooms, two of which were to be used at 1:30 P.M. by the D.I.A. They refused a second request to leave and, instead, moved inside the alcove and sat down on the floor, "blocking the doorways to the two rooms that were to be used at 1:30" by D.I.A. At that point Dean Hall called the campus police, who came to the area and again asked the appellants to leave, at the same time advising them that if they did not leave they would be arrested and charged with breach of the peace. When the appellants still refused to leave they were arrested by the campus police and physically carried down the stairs and out of the building into the campus police cruiser. The appellants did not offer any resistance except that they declined to move under their own power, thus requiring the arresting officers to transport them bodily from the premises.

During the time they were present in the alcove they did not raise their voices in a loud or boisterous manner, use profanity, or physically attack anyone and did not directly prevent anyone from entering any of the rooms. This was equally true of their conduct throughout the day. For a time in the morning appellant Lewis lay prone across a doorway in the alcove, thereby forcing people on several occasions to step over her, but this tactic did not actually succeed in preventing anyone from entering

the area. At one point in the morning appellant Woock raised his voice in a discussion, but he lowered it following an admonition by Dean Hall. He also moved when the dean told him that he was blocking the alcove area. In the afternoon, before the dean ordered the students to leave the second floor, a secretary sought to enter the alcove and some students, including appellants Woock and Lewis, were blocking her, but after being requested to do so they let her pass. Their "interest was not in blocking her," so they stated, "but in blocking the Defense Intelligence Agency".

After conviction of the appellants in the Lexington Police Court for breach of the peace an appeal was taken to Fayette Circuit Court. A motion to dismiss based on the unconstitutionality of KRS 437.010 under the First and Fourteenth Amendments to the Constitution of the United States and sections 1 and 8 of the Constitution of Kentucky was overruled, and the case proceeded to trial before a jury. At the conclusion of all the evidence appellants moved for a directed verdict, which also was denied. The jury returned a verdict of guilty and fixed the punishment of each appellant at a fine of $75. Judgment was entered pursuant to the verdict.

The crucial instructions given by the trial court to the jury were as follows:

"Instruction No. 1

"If the jury believe from the evidence in this case beyond a reasonable doubt that the defendants, Kristina Lewis, Dan Sheridan O'Leary, William Murrell and Rodger A. Woock, in Fayette County, Kentucky, and within 12 months next before the issuance of the warrant herein, did wilfully and intentionally commit a breach of the peace by interfering with the ordinary and normal functions of the Placement Service on the campus of the University of Kentucky by blocking the entrance to the Placement Service, you will find the defendants guilty as charged in the warrant, and fix their punishment

at a fine of not more than $100.00 or imprisonment in the county jail for not less than five nor more than fifty days, or by both such fine and imprisonment, in your discretion.

"Instruction No. 2

"A breach of the peace is a violation of public order or decorum; the offense of disturbing the public peace. By 'peace' is meant the tranquility enjoyed by the citizens of the community, where good order reigns among its members."

We do not pass on the correctness of these instructions, because they were given without objection and were not challenged by a motion for new trial. Cf. Hartsock v. Commonwealth, Ky., 382 S.W. 2d 861 (1964); Stanley's Instructions to Juries, § 797 (1967 Supp.). Therefore, whether appellants could validly be convicted of breach of peace under the facts of the case must be considered in terms of the offense as defined by law vis-a-vis the instructions. And in this particular, it is our opinion that the conduct of the appellants could have amounted to a breach of peace only after their right to be present at the time and place in question had been terminated.

The appellants make two basic arguments, one of which is that the law of breach of peace in this state is void because it is unconstitutionally vague and the other is that, if not void, it cannot apply to the exercise or attempted exercise of a First Amendment right because such activities can be prohibited or regulated only by a narrowly drawn law specifically delineating the circumstances and standards under which they are not allowable.

Breach of peace is a common law offense, the punishment for which is prescribed by statute. Delk v. Commonwealth, 166 Ky. 39, 178 S.W. 1129, 1131, L.R.A. 1916B, 1117 (1915). Appellants seem to feel that its application is confined to the types of fact-situations that have been the subject of appeals to this court, but we perceive no reason why that should be so. As in the instance of murder and other common law crimes, it may be committed in new ways if they fall within the interdict of the old principles.

"The term 'breach of peace' is generic, and includes all violations of public peace or order or acts tending to the disturbance thereof. The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the law affords every citizen, or of acts such as tend to excite violent resentment." King v. Commonwealth, 32 K.L.R. 79, 80, 105 S.W. 419 (1907). To paraphrase the last portion of this quotation, conduct that is calculated to incite violence is a breach of peace. "It includes not only violent acts but acts and words likely to produce violence in others." Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940). However, the literal breadth of the definition does not mean, and in this jurisdiction never has been construed to mean, that lawful and proper conduct may constitute a breach of peace just because it provokes violence or disorder. To the contrary, it was explicitly recognized in West v. Commonwealth, 208 Ky. 735, 271 S.W. 1079, 1081 (1925), that the lawful exercise of a constitutional right (the right of assembly) cannot be a breach of peace. We therefore do not feel that the law against breach of peace, as it has been thus construed in Kentucky, is so vague or overly broad in scope as to pose any threat to the rights of free speech and assembly guaranteed by the First and Fourteenth Amendments of the Constitution of the United States. Cf. Cox v. Louisiana, 379 U.S. 536, 551, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Indeed, it occurs to us that if there is any uncertainty in this context, it is not because the tried and settled law of breach of peace is vague, but because the burgeoning scope of the constitutional protections has become so.

■ In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), and Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), the Supreme Court invalidated convictions for common-law breach of peace which had been held valid by state courts. The same result was reached in Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1948), and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), with respect to statutory offenses. In each case the highest court of the state had construed the offense to include constitutionally protected conduct. Our law of breach of peace has never been so construed, and we do not so construe it now. In Shuttlesworth v. City of Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), and, apparently, Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), it was held that a conviction under an overly-broad law, whether statutory or judge-made, cannot be sustained by a limiting or narrowing construction placed upon the law for the first time in the particular case at hand. We repeat, however, that the law of breach of peace in this Commonwealth does not need to be whittled and trimmed to meet this case. We construe West v. Commonwealth, 208 Ky. 735, 271 S.W. 1079, 1081 (1925), as a clear indication that the law against breach of peace did not then and does not now prohibit constitutionally protected conduct.

■ It is important, we believe, to bear in mind that a decision concerning the applicability of a law to a factual situation which has not come before the court in the past does not amount to the making of a new law. And "it is firmly established by decisions of equal authority that a criminal law is not unconstitutional merely because it throws upon people the risk of rightly estimating a matter of degree which deals with fixed and actual, as distinguish-

ed from imaginary and unascertained, conditions." Bailey v. Commonwealth, 235 Ky. 173, 30 S.W.2d 879, 880 (1930).[1] See also Arlan's Department Store of Louisville v. Commonwealth, 369 S.W.2d 9, 11 (Ky.1963),[2] and cases therein cited.

There are many crimes that are and must be broadly defined, but which are not rendered invalid by the fact that the definitions do not specify every conceivable exculpatory circumstance. That the law against breach of peace as it has been construed in this state makes due allowance for the exercise of constitutional rights has been noted above. It has been likewise construed to allow other defenses. For example, in Hines v. Commonwealth, 308 Ky. 859, 215 S.W.2d 1014 (1948), the defendant was convicted of breach of peace for having indecently exposed his person in public. His excuse was that he had been stricken with a sudden physical emergency and had to remove some of his clothing in order to apply a palliative treatment to the affected area. In reversing with directions that a defensive instruction be given, the court commented as follows: "To illustrate, a person may be struck by an automobile and in getting at his injury he may tear off some of his clothing so as to cause an exposure of his person. We do not suppose it would be contended that his intent or motive had nothing to do with the act. In cases like the present regard must be had for the infirmity of the flesh and frailty of human nature. This man was confronted with an emergency, according to his testimony, and he believed he had removed himself from public view. At least that was his only defense. It is like self defense where one is attacked by another person." 215 S.W.2d 1015, 1016.

We are certain it never occurred to the members of the court in 1948 that they were constricting or changing the law.

1. Sustaining conviction of laundry owner under statute requiring employer to provide "suitable and proper washrooms and water closets" for female employes.

2. Upholding "work of necessity" exception to Sunday Closing Law.

They assumed that the most stable and enduring ingredient of the law is common sense, under which the same result would have been reached under existing principles at any prior time had a similar occasion presented itself.

The opinion of the Supreme Court in Ashton v. Kentucky, 384 U.S. 195, 200–201, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966), contains the following passage: "Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer. We said in Cantwell v. Connecticut * * * that such a law must be 'narrowly drawn to prevent the supposed evil' * * * and that a conviction for an utterance 'based on a common law concept of the most general and undefined nature,' * * * could not stand." Taken out of context, this statement might lead one to the conclusion that a common law conception of breach of peace cannot survive in the current constitutional atmosphere. That is not, however, what the court actually said in *Cantwell*. What the court there said was, in substance, that conduct *which is constitutionally protected* cannot be limited or regulated "in the absence of a statute narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State." 310 U.S. at 311, 60 S.Ct. at 906. Neither in *Cantwell* nor in any other decision that has been brought to our attention has the Supreme Court held that the common law crime of breach of peace has been put to death by the Constitution. Our remark in Ashton v. Commonwealth, Ky., 405 S.W.2d 562, 567 (1966), to the effect that "the ancient broad common law concept of what constituted a 'breach of peace' is no longer a constitutional basis for imposing criminal liability" was itself an overly broad statement and is not to be taken to mean that we have no law against breach of the peace in this state.

■ Appellants contend that if the law is not void for vagueness, nevertheless it cannot be applied to any attempt to exercise First Amendment rights. We cannot go that far. As properly construed, it does not prohibit the lawful exercise of any constitutional right. A person who desires to exercise his rights need not be concerned about defining the law against breach of peace. All he needs to do is to understand and stay within the limits of the right he wants to exercise. He cannot reasonably expect all and sundry to run for cover while he attempts to see how far into orbit he can shoot his own notions of right and wrong. We are fond, in this country, of reiterating the principle that even the greatest majority is powerless to throttle a constitutional right. It is equally true, however, that the existence of a constitutional right is neither a sword to cut up the rights of others nor a shield against the consequences of conduct that otherwise violates the law. The majority too has rights, not the least of which is the protection afforded by its criminal laws.

■ It is clear from the decisions of the Supreme Court, some of which are mentioned above, that free speech and the right of assembly in public places must not be left to the *ad hoc* discretion of provincial authorities, nor can people be ordered off the premises of business establishments, otherwise open to the public, for no reason except their creed or color. There is a difference, however, between public and private places, and in this context we regard the premises of a college or university as no different from private property. That the institution is financed with tax money is no reason why its governing body should not have the same dominion and control over it as would a private owner. No one would contend, we trust, that the presence of a group of demonstrators in the office of its president would be any more legitimated and protected by the Constitution than would be their presence in the White House at Washington.

"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." Adderley v. Florida, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed. 2d 149 (1966). Surely this must be true with reference to premises that are not, like streets, parks and playgrounds, maintained for use by the public in general.

█ The privilege of an enrolled student to use and occupy the property of a school is and should be subject to the will of its governing authorities. If he is told to stay out of a particular room, building, or familiar trysting place, he enters it as a trespasser. Likewise, if he is directed to leave it he remains as a trespasser. Here, the appellants entered the area in question by lawful permission, implied if not express, and albeit their acts and conduct were not illegal, and not a breach of peace, they were in a place from which the university had the right to exclude them. Their conduct in remaining thus assumed a different cast and significance after they had been asked to leave. They knew then that they were in a place they had no right to be.

It is our decided opinion that the right of free speech, or of assembly, or of petition, does not carry a passport to exercise it in a place where the person who would exercise it knows full well he has no right or license to be. We are equally convinced that to require a special "narrowly drawn law" so that he may be forewarned and certain of that which ought to be obvious to the merest child would be utterly absurd and an affront to the general citizenry of the country.

We find ourselves in agreement with these sentiments expressed by Mr. Justice Black in his dissent from the majority opinion in Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966):

"It is high time to challenge the assumption in which too many people have too long acquiesced, that groups that think they have been mistreated or that have actually have been mistreated have a constitutional right to use the public's streets, buildings, and property to protest whatever, wherever, whenever they want, without regard to whom such conduct may disturb * * *. Invasion of another man's property over his protest is one of the surest ways any person can pick out to disturb the peace * * *. Though the First Amendment guarantees the right of assembly and the right of petition along with the rights of speech, press and religion, it does not guarantee to any person the right to use someone else's property, even that owned by government and dedicated to other purposes, as a stage to express dissident ideas."

█ We hold that in this state, and to the extent of our power to say it, (1) the sanctity of a college campus and buildings is no less than that of private property; and (2) an exercise or attempt to exercise rights otherwise guaranteed by the First Amendment is not "protected" in the sense that, absent a regulation or statute specifically designed in advance to meet the narrow details of the event, it insulates the speaker or participant from the legal consequences of his presence or actions upon property where he knows or should know he has no right or permission to be.

█ That "an entry without actual force, although against the will of the owner, with a purpose expressed at the time when obtaining the possession not to surrender it," is a breach of peace was established in this state as long ago as 1884. Johnson v. Clem, 82 Ky. 84, 5 K.L.R. 793, 795 (1884). The obvious reason is that such an entry challenges the owner to exercise his ancient right to repel it by force. By the same reasoning a refusal to leave the property, though lawfully and peacefully entered in the first instance, invites the owner to eject the intruder by force. Force is violence. The laying on of hands to move a person against his will is violence. As a

matter of fact, if the arrests in this instance were not lawful the action of the police constituted an assault and battery upon the appellants. Wilful provocation of what would otherwise amount to assault and battery certainly is a breach of the peace.

 Johnson v. Clem, the last cited case, held that a refusal to leave upon request, accompanied by violent and abusive language announcing the purpose to hold possession, was a breach of peace. We think the same result must follow in this case. The incitement of force and violence implicit in a refusal to move upon rightful order of the owner or custodian of property does not depend on the amount of noise being made or not made by the trespasser. It is our conclusion that the actions of the appellants authorized their conviction for a breach of the peace.

We do not consider it to be of any legal significance that the appellants were but four in number and had remained in the posture of trespassers for only a few minutes before they were arrested. The dean's right to clear the area necessarily extended to each and all of the persons to whom his order was directed, and if it had not been enforceable immediately they most certainly would have remained there until they had succeeded in disrupting the lawful activities of those to whom the space had been assigned.

Earlier in this opinion we mentioned that the instructions may not have been correct, but that they were given without objection. Whether the evidence justified a conviction under the instructions actually given is not an issue in this case, and the appellants have not sought to make it one. In effect, their contention is that the evidence cannot support a conviction for breach of peace under any set of instructions. That is the argument this opinion answers in the negative.

The judgment is affirmed.

All concur.