No. 12195

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRUCE DAVID FISSETTE,

Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District, Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Brown and Gilbert, Bozeman, Montana.
William E. Gilbert argued, Bozeman, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana.
David V. Gliko, Assistant Attorney General, argued, Helena, Montana.
Thomas A. Olson, County Attorney, Bozeman, Montana.
Thomas D. Gai, Deputy County Attorney, appeared, Bozeman, Montana.

---

Submitted: April 25, 1972

Decided: JUL 2 0 1972

Filed: JUL 2 0 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant, Bruce David Fissette, was tried in the justice of the peace court in Gallatin County, Montana. Following a jury verdict of "guilty" of the misdemeanor crime of "physical control of vehicle while under the influence of intoxicating liquor", he was sentenced by the justice of the peace to pay a fine of $210.

Defendant appealed this judgment of conviction to the district court of the eighteenth judicial district, county of Gallatin and after a trial de novo the jury found defendant guilty. The court entered judgment on the verdict of a $500 fine and a jail sentence of six months, with all but thirty days suspended. Defendant appeals from the final judgment.

There is but one issue presented on appeal: Was it error for the district court to increase the sentence or punishment after trial de novo in the district court under the facts of this case?

The United States Supreme Court decision relied on by defendant, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L ed 2d 656, 669, states:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original 'sentencing proceeding.' And the

factual data upon which the increased sentence is based must be made part of the recrod, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (Emphasis added ).

<u>Pearce</u> was not a "de novo" cause in the context we are speaking of de novo in this opinion, yet the language does not exclude a "de novo" case when it speaks in terms of a new trial. Defendant argues that all trials "anew" are "de novo", viewed literally.

The United States Supreme Court in Colten v. Kentucky, _____U.S._____, _____S.Ct._____, _____L ed 2d _____, No. 71-404, (Kentucky Court of Appeals, Decided June 12, 1972), decided the issue presented here.

<u>Colten</u> involves a two-tier system, the same as our justice and district court system  and in Kentucky appeal from the lower court is a matter of right and the trial on appeal is de novo, as it is in Montana.

In discussing the issues in <u>Colten</u> the United States Supreme Court said:

"Colten rightly reads <u>Pearce</u> to forbid, following a successful appeal and reconviction, the imposition of a greater punishment than was imposed after the first trial, absent specified findings that have not been made here. He insists that the <u>Pearce</u> rule is applicable here and that there is no relevant difference between the <u>Pearce</u> model and the Kentucky two-tier trial <u>de novo</u> system. Both, he asserts, involve reconviction and resentencing, both provide the convicted defendant with the right to 'appeal' and in both---even though under the Kentucky scheme the 'appeal' is in reality a trial <u>de novo</u>---a penalty for the same crime is fixed twice, with the same potential for an increased penalty upon a successful 'appeal'.

"<u>But Pearce did not turn simply on the fact of conviction, appeal, reversal, reconviction, and a greater sentence. The court was there concerned with two dedefendants who, after their convictions had been set aside on appeal, were reconvicted for the same offenses and sentenced to longer prison terms.</u> In one case the term was increased from 10 to 25 years. Positing that a more severe penalty after reconviction would violate due process of law if imposed as purposeful punishment for having successfully appealed,the court concluded

that such untoward sentences occurred with suf-
ficient frequency to warrant the imposition of a
prophylactic rule to ensure 'that vindictiveness
against a defendant for having successfully at-
tacked his first conviction * * * [would] play no
part in the sentence he receives after a new trial
* * *' and to ensure that the apprehension of such
vindictiveness does not 'deter a defendant's exer-
cise of the right to appeal or collaterally attack
his first conviction * * *' 395 U.S., at 725.

"Our view of the Kentucky two-tier system of ad-
ministering criminal justice, however, does not
lead us to believe, and there is nothing in the
record or presented in the briefs to show, that the
hazard of being penalized for seeking a new trial,
which underlay the holding of Pearce, also inheres
in the de novo trial arrangement. Nor are we con-
vinced that defendants convicted in Kentucky's
inferior courts would be deterred from seeking a
second trial out of fear of judicial vindictive-
ness. The possibility of vindictiveness, found to
exist in Pearce, is not inherent in the Kentucky
two-tier system.

"We note first the obvious: that the court which
conducted Colten's trial and imposed the final
sentence was not the court with whose work Colten
was sufficiently dissatisfied to seek a different
result on appeal; and it is not the court that is
asked to do over what it thought it had already done
correctly. Nor is the de novo court even asked to
find error in another court's work. Rather, the
Kentucky court in which Colten had the unrestricted
right to have a new trial was merely asked to accord
the same trial, under the same rules and procedures,
available to defendants whose cases are begun in that
court in the first instance. It would also appear
that however understandably a court of general juris-
diction might feel that the defendant who has had a
due process trial ought to be satisfied with it, the
de novo court in the two-tier system is much more likely
to reflect the attitude of the Kentucky Court of Appeals
in this case when it stated that 'the inferior courts are
not designed or equipped to conduct error-free trials,
or to ensure full recognition of constitutional free-
doms. They are courts of convenience, to provide
speedy and inexpensive means of disposition of charges
of minor offenses.' Colten v. Commonwealth, 467 S.W.2d
374, 379 (Ky. 1971). We see no reason, and none is
offered, to assume that the de novo court will deal any
more strictly with those who insist on a trial in the
superior court after conviction in the Quarterly Court
than it would with those defendants whose cases are
filed originally in the superior court and who choose
to put the State to its proof in a trial subject to
constitutional guarantees.

" * * *

"It is suggested, however, that the sentencing strictures
imposed by Pearce are essential in order to minimize an

- 4 -

asserted unfairness to criminal defendants who must endure a trial in an inferior court with less than adequate protections in order to secure a trial comporting completely with constitutional guarantees. We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available. Proceedings in the inferior courts are simple and speedy, and, if the results in Colten's case are any evidence, the penalty is not characteristically severe. Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty without a trial and promptly secure a de novo trial in a court of general criminal jurisdiction. He cannot, and will not, face the realistic threat of a prison sentence in the inferior court without having the help of counsel, whose advice will also be available in determining whether to seek a new trial, with the slate wiped clean, or to accept the penalty imposed by the inferior court. The State has no such options. Should it not prevail in the lower court, the case is terminated, whereas the defendant has the choice of beginning anew. In reality his choices are to accept the decision of the judge and the sentence imposed in the inferior court or to reject what in effect is no more than an offer in settlement of his case and seek the judgment of judge or jury in the superior court, with sentence to be determined by the full record made in that court. We cannot say that the Kentucky trial de novo system, as such, is unconstitutional or that it presents hazards warranting the restraints called for in North Carolina v. Pearce, particularly since such restraints might, to the detriment of both defendant and State, diminish the likelihood that inferior courts would impose lenient sentences whose effect would be to limit the discretion of a superior court judge or jury if the defendant is retried and found guilty." (Emphasis added)

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_John Conway Harrison_

_Wesley Castles_

_Frank I. Haswell_
Associate Justices.